*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS F. MOORE,

        Defendant-Appellant.

UNPUBLISHED
December 8, 2022

No. 350955
Wayne Circuit Court
LC No. 19-003135-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS F. MOORE,

        Defendant-Appellant.

No. 350957
Wayne Circuit Court
LC No. 19-003535-01-FC

---

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a bench trial. Defendant was charged in two separate cases that were consolidated for trial. In LC No. 19-003135-01-FC, the court convicted defendant of unlawful imprisonment, MCL 750.349b, and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84.[1] The court sentenced defendant

---

[1] The court acquitted defendant of additional charges of torture, MCL 750.85, armed robbery, MCL 750.529, and assault and battery, MCL 750.81(1), and it granted a directed verdict on a count of felonious assault, MCL 750.82. The court found defendant guilty of a second count of felonious assault, but it vacated that conviction at sentencing on double-jeopardy grounds.

in this case to concurrent prison terms of 5 to 15 years for the unlawful imprisonment conviction and 5 to 10 years for the AWIGBH conviction. In LC No. 19-003535-01-FC, the court convicted defendant of two counts of assault with intent to commit murder (AWIM), MCL 750.83, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f(6), carrying a concealed weapon (CCW), MCL 750.227, witness intimidation, MCL 750.122(7)(c), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[2] In the second case, the court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 33 to 60 years for each AWIM conviction, one to four years for each felon-in-possession conviction, one to five years for the CCW conviction, and 1 to 15 years for the witness intimidation conviction, to be served consecutive to concurrent two-year prison terms for the felony-firearm convictions. Defendant appeals as of right in each case, and we affirm.

## I. BACKGROUND FACTS

Defendant's convictions in LC No. 19-003535-01-FC arise from the January 7, 2019 shooting assaults of Barbara Peruski and Adrian Cotton while they were sitting in a van in the parking lot of Peruski's apartment building in Detroit. Cotton became involved in a verbal confrontation with a man walking in front of the van. The man began to walk away, but then turned around and fired multiple shots at the van. Cotton was struck in the forehead. Peruski, who was not struck by the gunfire, identified defendant, whom she knew, as the shooter. A grand jury indicted defendant in that matter.

Before defendant was charged in the January 2019 shooting, the police were called to investigate a second incident involving defendant and Peruski, which led to the charges in LC No. 19-003135-01-FC. After Peruski appeared before a grand jury in relation to the January 2019 shooting, she left her neighborhood for her safety, but later returned for a visit. Peruski, accompanied by Jennifer Foster and Christopher Crawford, returned to her former neighborhood to pick up some belongings during the early morning hours of April 6, 2019. After Peruski exited her vehicle to cross the street, she heard defendant call out her name. Peruski ran off and Foster followed her, but defendant caught up to Peruski and began physically assaulting her. Foster tried to assist Peruski, but defendant hit her in the face, knocking her into some bushes. Crawford also tried to help and defendant stabbed him three times with a box cutter. Defendant then took Peruski by her arm to some apartments, where he held her in a courtyard area and told her that she had only one hour for Pam Edens to arrive to save her life. Defendant told Peruski that she owed Edens $50, which Peruski denied. While defendant continued to argue and fight with Peruski, a man appeared on a balcony and told him to stop. Defendant then dragged Peruski into an apartment and began to count down how much longer she had to live before he was going to kill her. The man from the balcony, referred to as "Slim," came to the apartment while armed with a gun and escorted Peruski away to the safety of another apartment. In the meantime, Foster had called the police and Peruski eventually left the building to talk to the police. Defendant was arrested

---

[2] The court acquitted defendant of two counts of AWIGBH, two counts of felonious assault, MCL 750.82, and six counts of felony-firearm.

approximately an hour after the police initially responded, after the police obtained information about his whereabouts from his cell phone service provider.

## II. JOINDER

Defendant first argues that the trial court erred by granting the prosecution's motion to consolidate the two cases for trial. We disagree.

A trial court's decision regarding the consolidation of related charges is generally reviewed for an abuse of discretion. *People v Breidenbach*, 489 Mich 1, 14-15; 798 NW2d 738 (2011); *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997). However, before deciding whether joinder is permissible, the trial court must first find the relevant facts and must then decide whether those facts establish that the offenses are related for purposes of allowing joinder. The trial court's factual findings are reviewed for clear error, and any questions of law are reviewed de novo. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009).

Before trial, the prosecution moved to consolidate the two cases for trial on the ground that they involved connected acts and a single scheme or plan by defendant. The prosecutor argued that the two cases were related under MCR 6.120 and *Williams*, 483 Mich at 233, to support joinder of the two cases. The trial court agreed and granted the prosecution's motion.

Under MCR 6.120(B) and (C), a court is permitted to join offenses charged in two or more informations or indictments against a single defendant if the offenses are related, but it must sever offenses at a defendant's request if the offenses are not related. MCR 6.120(B) and (C) provide:

> **(B) Postcharging Permissive Joinder or Severance.** On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

**(C) Right of Severance; Unrelated Offenses**. On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1).

Defendant argues that joinder was not appropriate because there was no relationship between the two cases, other than a common witness, Peruski, and the two cases did not involve a single scheme or plan. He further submits that if the cases had been tried separately, the trier of fact would not have been influenced by the volume of charges that prejudiced its factual findings. We disagree.

The plain language of the court rule allows for joinder of "related" offenses, and offenses are related if they consist of the "same conduct" or "a series of connected acts or . . . acts constituting part of a single scheme or plan." MCR 6.120(B)(1)(a)-(c). When there is a logical relationship between joined counts as well as overlapping proofs, joinder is appropriate. *Williams*, 483 Mich at 237. The admissibility of evidence in other trials is also examined when determining if joinder is appropriate because the joinder of other crimes cannot prejudice defendant. *Id*. In MCR 6.120, there is no temporal requirement, and the acts need not be committed at the same time. Yet, the acts may nevertheless be deemed connected acts or acts constituting a single scheme or plan. *Id*. at 241. An error in the joinder of cases does not constitute grounds for disturbing the judgment unless refusal to take such action appears to be inconsistent with substantial justice. *Id*. at 243.

The trial court did not abuse its discretion in the joinder of cases because a series of connected acts occurred. Although the acts occurred months apart, they were related to defendant's assault upon Peruski and Cotton, and Peruski's cooperation with law enforcement. Peruski was not only a common witness, she was a victim of defendant's conduct in both cases. Moreover, Peruski testified that on the night defendant shot Cotton, defendant confronted her, complained about her hanging around with Cotton, and threatened to rob Cotton if he saw Peruski with Cotton again. Defendant also threatened Peruski that if she spoke to anyone about this, including the police, he would harm her and her family. Peruski testified that, during the April incident, after she had already appeared before a grand jury to offer testimony implicating defendant in the January shooting of Cotton, defendant asked her if she had been speaking with the police and again made statements about her "being with men that treat [her] like sh*t." The two cases represent a series of connected acts wherein defendant questioned Peruski's relationships with others and her allegiance to him.

Further, as the trial court indicated, there was a likelihood that evidence of both offenses would have been admissible at each trial if the cases were tried separately. See MRE 404(b)(1). And there was no indication that the trial court, as the trier of fact, was prejudiced or misled as a result of the number of charges and the joinder of the cases. There is a presumption in a bench trial that the trial court knows the applicable law and is able to distinguish between admissible and inadmissible evidence. *People v Lanzo Constr Co*, 272 Mich App 470, 484-485; 726 NW2d 746 (2006). The trial court correlated its factual findings to the convicted offenses and dismissed charges unsupported by its view of the evidence. There was no evidence in the lower court record

to override the presumption applied to a bench trial. Under these circumstances, the trial court did not abuse its discretion by finding that the cases were appropriate for joinder in accordance with MCR 6.120.

## III. RES GESTAE WITNESSES

Next, defendant argues that the trial court should have granted his motion for a new trial on the ground that the prosecution failed to disclose and produce several res gestae witnesses. A trial court's decision whether to grant a new trial is reviewed for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "An abuse of discretion occurs when a trial court's decision 'falls outside the range of reasonable and principled outcomes.' " *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017), quoting *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

At trial, testimony referenced several individuals who were not called as witnesses. The principal witness who was not called was Edens. The man known as "Slim," who took Peruski from the apartment where she was being held by defendant, also was not called at trial. Testimony also indicated that Slim took Peruski to another apartment that was occupied by several individuals. Those individuals included "Ken," "Posse," and "ManMan," none of whom were called or identified before trial And when Peruski left Slim's apartment to meet with the police, she was accompanied by a woman, "DeeDee," who also was not called or identified before trial. According to testimony at trial, the police did not procure information from DeeDee at that time because they were focused on trying to find defendant. The person who Peruski was staying with during her April 2019 visit, referred to as "Brick," also was not identified until trial and was not called as a witness. Defendant argues that he is entitled to a new trial because the prosecution violated its duty to identify these witnesses and produce them at trial. We disagree.

A prosecutor no longer has an affirmative duty to call at trial all res gestae witnesses. *People v Koonce*, 466 Mich 515, 518-519; 648 NW2d 153 (2002). Instead, the prosecutor is obligated to disclose all *known* res gestae witnesses, to update that list, and to provide the names of all witnesses who the prosecution intends to call at trial. *Id*. at 517-521; MCL 767.40a(1)-(3).[3] The prosecutor is also obligated to render reasonable assistance in locating and serving process

---

[3] In pertinent part, MCL 767.40a reads:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

upon a witness when requested by the defendant. *Koonce*, 466 Mich at 521; MCL 767.40a(5).[4] However, when the prosecution endorses a witness, there is an obligation to produce that person at trial unless there is a showing that the person could not be produced despite the exercise of due diligence. *People v Eccles*, 260 Mich App 379, 388-389; 677 NW2d 76 (2004). And, if the prosecutor violates MCL 767.40a by failing to identify or produce a witness, the trial court must determine if the defendant was prejudiced by the witness's absence. *People v Pearson*, 404 Mich 698, 723; 273 NW2d 856 (1979); *People v Everett*, 318 Mich App 511, 524-525; 899 NW2d 94 (2017). A res gestae witness is one who witnesses some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts at trial. *People v Long*, 246 Mich App 582, 585; 633 NW2d 843 (2001).

Following an evidentiary hearing, the trial court denied defendant's motion for a new trial on this ground because, even if the prosecution erred by failing to identify or produce a witness, there was no showing that any of the absent witnesses would have made a difference in the proceedings. We agree.

The primary witness who defendant argues should have been produced is Edens. However, Edens was properly identified as a possible res gestae witness on the prosecution's witness list, but she was not endorsed as a witness who the prosecution intended to call at trial, so the prosecution did not have an obligation to produce her at trial. Moreover, it is undisputed that defendant was aware of this witness. Defense counsel explained that her defense investigator spoke to Edens, who did not wish to participate or testify at trial. The investigator also reported that any testimony she provided would not have been helpful to defendant. Although defendant complains that the police did not do more to investigate this witness, "[f]or due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). The "police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence." *Id.* Defendant was aware of this witness and could have requested assistance in producing her for trial, but no request was made, presumably because the defense investigator determined that her testimony would not have been helpful. Therefore, the prosecution was under no obligation to produce this witness for trial.

As for Slim, the record indicates that he was not identified as a witness by the prosecution. However, defense counsel conceded that she was aware of this witness and knew his identity, but

---

[4] MCL 767.40a(5) provides:

The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness. The request for assistance shall be made in writing by defendant or defense counsel not less than 10 days before the trial of the case or at such other time as the court directs. If the prosecuting attorney objects to a request by the defendant on the grounds that it is unreasonable, the prosecuting attorney shall file a pretrial motion before the court to hold a hearing to determine the reasonableness of the request.

did not want to pursue him as a witness. According to defense counsel's testimony at the evidentiary hearing, a defense investigator spoke to Slim and determined that his testimony would have placed defendant at the scene and "in the middle of this incident," and his testimony would have been "detrimental" to defendant's case. Therefore, defendant cannot show that he was prejudiced by the prosecution's failure to identify and produce this individual for trial.

The witness known as "DeeDee" was not investigated and, according to Peruski's testimony at trial, she, like "Ken," "Posse," and "ManMan," were witnesses only to what occurred after Slim escorted Peruski from the apartment where she was being held by defendant. While the police were aware of DeeDee because she was present when they responded to the scene, the other individuals were not identified by Peruski until trial. None of these individuals were named on the prosecution's witness list, but there is no indication that any of them were witnesses to any of the events that formed the basis for the charges against defendant. Thus, it is questionable whether they were known res gestae witnesses who should have been disclosed. *Long*, 246 Mich App at 585. But, even assuming that the prosecution should have known about and disclosed these witnesses, defendant has not shown that any of these individuals had information that could have been helpful to defendant's case. Thus, defendant has not shown that he was prejudiced by their absence.

As for "Brick," the record indicates that he too was not identified by the prosecution. First, there has been no showing that Brick was a known witness. But even if the prosecution should have been aware of his status as a witness and had an obligation to identify him, there is no basis for concluding that defendant was prejudiced by his absence. At trial, Peruski testified that his role was limited to yelling at her to go away when she banged on his door as she tried to get away from defendant. There is no evidence that he had any information that may have been helpful to the defense. Because defendant cannot show that he was prejudiced by the prosecution's failure to identity or produce Brick as a witness, defendant is not entitled to a new trial because of Brick's absence.

In sum, the trial court did not abuse its discretion by denying defendant's motion for a new trial on the ground that the prosecution failed to identify and produce certain witnesses for trial.

IV. INDICTMENT

Defendant moved for postjudgment relief on the ground that the prosecutor improperly amended the filed grand jury indictment, which stated that the felony-firearm charges in Counts 9 and 10 were based on the underlying felony of armed robbery. The amendment specified that the felony-firearm charges in Counts 9 and 10 were instead based on the underlying felony of AWIM. Defendant argues that the prosecutor was not authorized to amend the grand jury's indictment without returning the case to the grand jury. The trial court denied defendant's motion for postjudgment relief with respect to this issue. We review the trial court's decision for an abuse of discretion. *Cress*, 468 Mich at 691.

It is a generally accepted rule that where a statute vests courts with the power to amend indictments, any amendment not prejudicial to the rights of the accused may be allowed. *People v Watson*, 307 Mich 596, 601-602; 12 NW2d 476 (1943). In *People v Weathersby*, 204 Mich App

98, 103; 514 NW2d 493 (1994), overruled on other grounds by *People v Stevens*, 498 Mich 162, 179-180; 869 NW2d 233 (2015), this Court explained:

> Pursuant to MCL 767.75 . . . , no indictment may be quashed, set aside, or dismissed on the grounds that it contains an "uncertainty." Rather, if a court is of the opinion that an uncertainty exists, it may order an amendment of the indictment to cure the defect. MCL 767.76 . . . provides in relevant part:
>
> > The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury.
>
> Michigan law clearly contemplates amending indictments for substantive defects without interrupting the trial process, at least where the amendment would not prejudice the defendant. Cf. *People v Hunt*, 442 Mich 359; 501 NW2d 151 (1993).

The lower court record contains a handwritten copy of the grand jury's indictment, signed by Judge Thomas E. Jackson on May 9, 2019, which states that Counts 9 and 10 were felony-firearm charges based on "AWIM," i.e., assault with intent to murder. But the formal indictment filed on May 14, 2019, instead listed the underlying felony for Counts 9 and 10 as armed robbery, even though defendant was not separately charged with armed robbery. On July 31, 2019, the prosecution filed an amended indictment to correct this error and clarify that the underlying felony for Counts 9 and 10 was AWIM.

It is apparent that the indictment filed on May 14, 2019, contained a clerical error because there was no separate charge of armed robbery. The July 31, 2019 amendment corrected this error to reflect that the felony-firearm charges in Counts 9 and 10 were instead based on the underlying felony of AWIM, which was separately charged in the indictment. Because the amendment was made before trial, and because defendant had notice that he was separately charged with two counts of AWIM and the amendment was consistent with the grand jury's original indictment, defendant was not prejudiced by the amendment and there was no need to remand the case to the grand jury for this correction. Accordingly, the trial court did not abuse its discretion by denying defendant's postjudgment motion for relief with respect to this issue.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL – WARRANTLESS SEARCH

Next, defendant alleges that trial counsel was ineffective for failing to challenge the warrantless seizure of tracking data from defendant's cellphone provider in a motion to suppress.[5] We hold that defendant is not entitled to appellate relief on the basis of this issue.

The record indicates that when the police initially responded to the scene of the April incident, they did not immediately know where Peruski was or whether she was safe.  Peruski eventually called Foster from Slim's apartment and Foster gave the phone to the police, who were already at the scene.  Peruski did not know if defendant was still in the area, but left Slim's apartment and met the police outside.  The police obtained defendant's cell phone number and submitted an "EXIGENT Request Form" to T-Mobile to "ping" defendant's phone to learn the location data.[6]  The form indicated that the basis for the request was "[i]mmediate danger of death or serious physical injury to any person" and stated that "[a] kidnapping with the person owning this phone number just occurred in the city."  Using the location data, the police learned that defendant's phone was in the area of Wayburn Street and Morang Avenue, which was seven or eight blocks from the crime scene.  The police went to that area and saw defendant on the street, where they arrested him without incident.

At the *Ginther*[7] hearing, trial counsel testified that she could not recall how defendant was apprehended.  But counsel acknowledged that the police requested defendant's cell phone provider to "ping" his phone on an emergency basis.  On direct examination, she testified that a search warrant was generally necessary to acquire such information.  On cross-examination, however, counsel acknowledged that the request made by the police was sought on an emergency basis.  Additionally, counsel testified that her trial strategy was to challenge the identification of defendant as the perpetrator because of the incredible testimony offered by Peruski and Cotton that was repeatedly impeached.  And counsel sought to demonstrate that the cases had been overcharged.  At the hearing, no further police testimony was offered to establish a timeline of the assaults at the apartment complex on the three individuals and defendant's flight from the scene in relationship to the request to the cellphone provider.

---

[5] To properly present an issue for appellate review, it must be raised in the statement of questions presented.  *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011).  Defendant's challenge to exigent circumstances was raised in the context of his claim of ineffective assistance, and he did not separately challenge the propriety of the admission of the cellphone tracking data.  Consequently, he waived appellate review of exigent circumstances, despite the presentation of caselaw addressing exigency in the discussion section of the ineffective assistance claim.  *Id*.

[6] The form explained that "[t]he urgency of the situation makes it unfeasible to obtain a written legal demand for the information sought" and "requested release of the following customer data": (1) name, (2) address, (3) [c]all [d]etail [r]ecords" for the "[l]ast 48 [h]ours," (4) "[c]all [d]etail [r]ecords with [c]ell [s]ites" for the "[l]ast 48 [h]ours," and "continuous location in "15 [m]inute [i]ntervals for 48 [h]ours[.]"  It did not request defendant's "[c]urrent [l]ocation ([o]ne-[t]ime [p]ing[.]"

[7] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011); *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews a trial court's factual findings for clear error and questions of law de novo. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

To obtain a new trial premised on ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). It is presumed that trial counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Defense counsel will not be deemed ineffective for failing to raise a meritless or futile objection. See *People v Muhammad*, 326 Mich App 40, 58 n 7; 931 NW2d 20 (2018). The burden of establishing the factual predicate for a claim of ineffective assistance of counsel is on the defendant. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999); *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018).

The trial court found that defendant failed to establish this claim of ineffective assistance of counsel, and we agree. In *United States v Carpenter*, ___ US ___; 138 S Ct 2206, 2217, 2220; 201 L Ed 2d 507, 521, 525 (2018), the Court held that individuals retain a legitimate expectation of privacy for historical cell-site location information (CSLI), entitling them to protection of records of their physical movements through the use of cellular data, even though that data is collected by third parties. In order to obtain that information, the Fourth Amendment requires that the police first obtain a search warrant. *Id*. at ___; 138 S Ct at 2220-2221. However, the Court also discussed exceptions to the warrant requirement, including the need to locate a fleeing suspect, protect individuals threatened with imminent harm, or to preclude the imminent destruction of evidence. *Id*. at ___; 138 S Ct at 2222-2223. The Court further explained that its decision was "a narrow one" and that expressed no view on *real-time* CSLI. *Id*. at ___; 138 S Sct 2220.

The record supports that there were exigent circumstances to allow the police to obtain the cell phone data without a warrant. Defendant previously shot at Peruski and Cotton. Months later, defendant committed an assault upon Peruski, assaulted Foster when she tried to intervene, and stabbed Crawford with a boxcutter when he tried to intercede. Foster saw defendant take Peruski to a common area, but he moved Peruski into an unknown apartment. Thus, when police initially arrived at the apartment complex, they were aware of the escalating assaults that defendant committed but unaware of his location with Peruski. Peruski was able to flee from defendant with the assistance of Slim who pointed a gun at defendant. Because defendant was known to frequent the location, the police were unaware if defendant had fled the scene or if he intended to return with a gun.

And given defendant's assaults on Peruski, Foster, and Crawford, the police had probable cause to arrest defendant without a warrant. MCL 764.15(1)(a)-(d), and (f). See also *People v Hammerlund*, 504 Mich 442, 453 n 5; 939 NW2d 129 (2019) ("Probable cause to arrest exists where the facts and circumstances known to the officer would warrant a person of reasonable caution to believe that the offense was committed by the suspect."); see also *People v Coward*,

111 Mich App 55, 61; 315 NW2d 144 (1981) (A police bulletin advising officers of the commission of a felony coupled with the perpetrator's description can provide probable cause for a warrantless arrest of the person matching the perpetrator's description found along a possible escape route shortly after the crime.). Furthermore, even if a warrant should have been obtained, defendant has not demonstrated a reasonable probability that the outcome of trial would have been different had defense counsel challenged the warrantless seizure of defendant's cellphone data to determine his location. This claim of error does not entitle defendant to appellate relief.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL – FAILURE TO CALL WITNESSES AND TEST EVIDENCE

Defendant also raises additional claims of ineffective assistance of counsel. Specifically, he argues that counsel was ineffective for not calling Edens and others as witnesses at trial, and for not requesting that a box cutter found in defendant's possession be tested for DNA.

As to Edens, defendant must overcome the presumption that counsel's decision not to call Edens was sound trial strategy. *People v Smith*, 336 Mich App 79, 102-103; 969 NW2d 548 (2021). As discussed earlier, Edens was uncooperative, but a defense investigator was able to speak to her and he determined that any testimony she could offer would not be helpful to defendant. Moreover, defendant never told counsel that Edens's testimony would be favorable. Because the record indicates that defense counsel investigated this individual and reasonably declined to call her as a witness after learning that her testimony would not be helpful to defendant's case, this ineffective-assistance claim cannot succeed.

Defendant also asserts that other unspecified witnesses should have been called, but because he does not identify the other witnesses he believes should have been called or provide the substance of any testimony they could have offered, he has not established the factual predicate for this claim. See *Hoag*, 460 Mich at 6. Therefore, this claim also cannot succeed.

Turning to the allegation that defense counsel was ineffective for not requesting DNA testing of the box cutter found in defendant's possession, defense counsel explained at the evidentiary hearing that she did not request DNA testing of the box cutter because, after discussing the myriad possibilities of testing with defendant, defendant asked her not to request that testing. Furthermore, counsel also believed that a negative test would not have been particularly helpful for the defense because of the one-hour gap between defendant's alleged assault of the victims and his arrest. On the other hand, if testing showed that DNA from one of the victims was on the box cutter, it would have been "devastating" to defendant's case. Counsel agreed that the possibility of a negative DNA test was outweighed by the potentially devastating risk of a positive DNA test.

Thus, the record shows that defense counsel considered the possibility of requesting DNA testing of the box cutter, but after discussing the matter with defendant, reasonably decided against doing so because (1) defendant told counsel not to pursue testing of that evidence, and (2) counsel reasonably believed that any benefit from testing was outweighed by the potentially devastating risk of a positive DNA test. Defendant has not overcome the presumption that counsel's decision not to pursue DNA testing of the box cutter was sound trial strategy.

## VII. CUMULATIVE ERROR

Defendant also argues that he is entitled to reversal of his convictions because of the cumulative effect of many errors in these cases. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Gaines*, 306 Mich App 289, 321-322; 856 NW2d 222 (2014). "In making this determination, only actual errors are aggregated to determine their cumulative effect." *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). Consequently, "individual claims of error either have merit or they do not." *LeBlanc*, 465 Mich at 591 n 12. Having considered and rejected defendant's claims of error, defendant is not entitled to relief on this basis. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007) ("Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal.").

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood

-12-